UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 1:04-CV-99

v.

Hon. Hugh W. Brenneman, Jr.

FORTY-SEVEN THOUSAND, FIVE
HUNDRED FIFTY DOLLARS
($47,550) UNITED STATES CURRENCY,

    Defendant.

_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This is a civil forfeiture action *in rem* for the forfeiture of $47,550.00 of currency pursuant to 21 U.S.C. § 881(a)(6).

**Procedural Background**

The government filed a complaint for forfeiture in rem on February 13, 2004, stating that $47,550.00 in United States currency was seized on that date pursuant to a federal search warrant executed at the residence of Stacey Gibson and Evelyn Farmer, 5201 Morgan Road, Bedford Township, MI. Compl. at ¶ 3. Stacey Gibson and Ms. Farmer were defaulted on May 3, 2004. *See* docket nos. 11, 14. Two weeks later, Stacey Gibson's mother, Ms. Peggy Gibson ("claimant"), filed an answer and affirmative defenses to the complaint, stating that she was the "innocent owner" of $44,000.00 of the seized money. *See* docket no. 19.[1]  On May 25, 2004, the court entered default

---

[1] In her verified claim (docket no. 7), Ms. Gibson stated that she was an "owner and/or co-owner" of the $44,000.00. This statement is contradicted by Ms. Gibson's own testimony that the $44,000.00 included $25,001.00 of currency which she was hiding for her son, David Gibson. *See infra*. Given this admission, Ms. Gibson was not an owner but a bailee of the property. *See George L. Nadell & Co. v. Horton*, 294 Mich. 150, 154; 292 N.W. 684 (1940) (a bailment includes "the delivery of personal property by one

judgment in favor of the government in the amount of $3,550.00 of the currency. *See* docket no. 22. This matter was set for a bench trial with respect to the remaining balance of $44,000.00. *See* docket no. 26. The parties consented to have this matter tried by the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. Rules Civ. Proc. 73. *See* docket no. 27. Following a one-day bench trial, post-trial briefs were submitted. The case is ready for decision.

## FINDINGS OF FACTS

Based upon the testimony and exhibits received at trial, and upon the record in this proceeding, the court makes the following findings of fact as required under Fed. R. Civ. Proc. 52(a)[2]:

### *The seizure of the currency*

1. The Drug Enforcement Agency (DEA) made two controlled drug purchases from Stacey Gibson. The first purchase involved powder cocaine at a fast-food restaurant on October 24, 2003. The second purchase involved half-powder cocaine and half-crack cocaine at an address on Van Buren Street in Battle Creek, MI on December 23, 2003. Stacey Gibson's record establishes him as a substantial drug dealer.[3]

---

person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it"). The government did not contest Ms. Gibson's verified claim, in which she states that she was an owner or co-owner, rather than a bailee, of the currency. Ms. Gibson could object to the forfeiture as a bailee. "The possessory interest of a bailee of seized currency is sufficient to be a claimant with standing to contest a forfeiture." *United States v. $244,320.00 in U.S. Currency*, 295 F.Supp.2d 1050, 1060 (S.D. Iowa 2003) (listing cases). Accordingly, the court will address Ms. Gibson's claims as both an owner and a bailee of the seized currency.

[2] Any findings of fact which contain conclusions of law shall be considered as such.

[3] Trial Trans. at 11-19, 113.

2. On January 22, 2004, the Grand Jury indicted Stacey Gibson on one count of conspiracy to distribute over 500 grams of cocaine and 50 grams of cocaine, and on three separate counts of distribution of cocaine.[4]

3. On February 3, 2004, Magistrate Judge Joseph G. Scoville issued warrants to search 29 Franklin Street, Battle Creek, Michigan, and 5201 Morgan Road, Bedford Township, Michigan, for evidence of drug trafficking.[5]

4. The search warrants were supported by the controlled purchases of cocaine from Stacey Gibson, surveillance of 29 Franklin and 5201 Morgan by the DEA, and the seizure of $140,000.00 and one kilogram of cocaine from a vehicle in Lansing, IL, which was connected to Stacey Gibson.[6]

5. Stacey Gibson resided with his girlfriend, Evelyn Farmer, and her young daughter at 5201 Morgan Road, a one-level, single family residence.[7]

6. Stacey Gibson was present at the Franklin Street address when the search warrant was executed on February 3, 2004.[8] He was arrested pursuant to a pending indictment for conspiracy to distribute cocaine and crack cocaine.[9] During the search, agents discovered

---

[4] *United States v. Gibson*, No. 1:04-cr-20 (docket no. 33).

[5] Trial Trans. at 11-12.

[6] *Id.* at 11-13.

[7] *Id.* at 13, 21.

[8] *Id.* at 13.

[9] *Id.* at 14-15.

3

approximately one ounce of cocaine, approximately 600 grams of marijuana, packaging materials and a scale .[10]

7. Stacey Gibson accompanied DEA agent Terry Glynn in executing the search warrant at 5201 Morgan. Numerous pit bulls were roaming the backyard of the house. Stacey Gibson cooperated in the search by controlling the pit bulls.[11] Before entering the house, Agent Glynn asked Stacey Gibson if he had any large sums of money in the house. Gibson told Agent Glynn that "he had a large sum of money" behind the refrigerator in his bedroom, thereby acknowledging the money as his and pointing out its specific location.[12]

8. Agent Glynn found $44,000.00 in a plastic grocery bag, the money at issue in this action, behind a small refrigerator in Stacey Gibson's bedroom at 5201 Morgan.[13] DEA agents also found $3,550.00 in Stacey Gibson's jacket in the closet, and 53.6 grams of marijuana in a plastic bag between the mattresses of the bed.[14]

9. When asked if the money behind the refrigerator was from drug proceeds, Stacey Gibson identified it as money "from the sale of my girl's house." This testimony was allowed into evidence to show Gibson knew about the money, notwithstanding claimant's assertion that it was she who had hidden the money behind the refrigerator.[15]

---

[10] *Id.* at 14.

[11] *Id.* at 20-22.

[12] *Id.* at 22-23.

[13] *Id.* at 8, 23-24.

[14] *Id.* at 24-25, 27-2; Stipulation of Uncontroverted Facts.

[15] *Id.* at 25-26.

4

10. Stacey Gibson pled guilty to conspiracy to distribute and possess with intent to distribute over 500 grams of cocaine and over 50 grams of cocaine base, pursuant to a written plea agreement dated May 10, 2004.[16] Under this plea agreement, Gibson agreed not to contest the forfeiture of the $44,000.00 at issue in this litigation.[17] He admitted that $90,000.00 seized in Lansing, IL, belonged to him, and that the $90,000.00 was the "proceeds of illegal controlled substance activity and used to facilitate criminal activity in violation 21 U.S.C. §§ 846 and 841(a)(1)."[18] Stacey Gibson also admitted that he supplied crack cocaine and powder cocaine to between twelve and twenty dealers in the Battle Creek area. He received a sentence of 108 months in prison.[19]

### *Ms. Gibson's claim*

11. Ms. Gibson has filed a claim stating that she is the "innocent owner" of the $44,000.00 found at 5201 Morgan.[20] She claims she hid it behind her son's refrigerator on January 26, 2004, without telling anyone.

12. Claimant testified that another son, David Gibson, received $25,000.00 or $25,001.00 from a trust funded by his deceased grandmother, Helen Latham.[21] On June 27, 2003, this court sentenced David Gibson to 46 months' imprisonment for a federal firearms violation.[22]

---

[16] Deft.'s Exh. 15; *United States v. Gibson*, 1:04-cr-20 (docket no. 33).

[17] *Id.*

[18] *Id.*

[19] *United States v. Gibson*, 1:04-cr-20, Plea Trans. at 20-23 (docket no. 42); Stipulation of Uncontested Facts.

[20] Claimant's Answer (docket no. 19).

[21] Trial Trans. at 48-51; Def.'s Exh. 1 (letter from Attorney Stanton).

[22] *United States v. David Gibson*, 1:02-cv-286 (W.D. Mich.) (docket no. 40).

Claimant testified that David Gibson gave her $25,000.00 in cash before he was sent to federal prison and directed her not to put the money in a bank but to hide it in a safe place.[23] She further testified that she hid the money in a secret place in her home located at 1018 Pigeon Street, Jackson, MI.[24] Claimant identified this $25,000.00 as "David's money" and distinguished it from cash she identified as "my money."[25] Claimant testified that she never counted David's money.[26]

      13. Claimant testified that she had over $20,000.00 of her own money hidden in the secret place in her home.[27] Claimant also testified that she knew exactly how much money she had hidden and "exactly how much money was behind that refrigerator."[28] She testified that her son David Gibson completed an affidavit stating that he gave her $27,000.00 and later changed it to $25,000.00.[29]

      14. Claimant testified that, in her opinion, it was not smart to deposit money in banks and that it is not always safe.[30]

      15. Claimant admitted that she had both a checking and savings account at Flagstar Bank.[31] Claimant and her mother (Ilene Amos) have maintained a checking account at Flagstar

---

[23] Trial Trans. at 52-54.

[24] *Id.* at 54.

[25] *Id.* at 57, 72.

[26] *Id.* at 75.

[27] *Id.* at 54-58, 72.

[28] *Id.* at 57, 74-75.

[29] *Id.* at 73-74.

[30] *Id.* at 75-76.

[31] *Id.* at 76-78; Govt.'s Exh. 3; Def.'s Exh. 2.

Bank since January 2001.[32] On October 23, 2001, claimant executed a signature card for the checking account in the names of Peggy Gibson and Ilene Amos as "joint w/right of survivorship."[33] This account was used continuously through December 2004.[34]

16.  Claimant and Ilene Amos owned a savings account at Flagstar Bank since August 1999.[35]  On November 1, 2000, claimant executed a signature card for the savings account at Flagstar Bank, listing the owners as "Peggy Gibson," "Peggy Gibson TR ITF Ilene Amos," with the account designated as "joint - with survivorship" and with a "revocable trust designation."[36]  This account was used continuously through February 26, 2004.[37]

17.  Claimant testified that her take-home pay averages about $1,200.00 per month and that she receives about $500.00 per month from the "Department of Social Services" to pay for food and clothing for her four grandchildren.[38]  Claimant presented no explanation for how she was able to accumulate about $21,000.00 in cash based upon her monthly income and government assistance payments.

18.  Factually, there is no middle ground in this case.  Either claimant secretly placed the $44,000 behind the refrigerator at 5201 Morgan, or she did not.  If she did, there is not sufficient

---

[32] Govt.'s Group Exh. 4-A.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* This account purports to be both a joint account with right of survivorship and a trust account for the benefit of claimant's mother.  While this is designated as a joint account with right of survivorship, claimant is the only person that signed the signature card on the account.

[37] *Id.*

[38] Trial Trans. at 83-87.

7

evidence of record to disprove her claim of ownership of this money. If she did not hide the money, then she has (and makes) no other claim to it. Claimant's credibility is pivotal to this question and the only real issue in the case. Accordingly, it is discussed at some length below.

        19. After having the opportunity to carefully observe claimant, listen to her testimony, ask her questions, and review the transcript and exhibits before the court, including the contradictory statements of Stacey Gibson, I cannot, and do not, find her to be a credible witness. Her story is both implausible and riddled with inconsistencies. It provides no basis for finding that claimant is the owner (or bailee) of the money at issue, or that she hid it behind the refrigerator in her son's apartment.

        Claimant maintains that shortly before the large amount of money at issue was seized from her son's home in Battle Creek, she took it from a secret hiding place in her apartment in Jackson, drove to Battle Creek, and hid it behind the refrigerator in her son's bedroom for the day, telling nobody she was doing this before, during, or after hiding it. She states she did this to protect the money from a plumber who was working on her home in Jackson. It also appears this was a one-time occurrence that just happened to occur shortly before authorities found the money. There was testimony that work was frequently done on her home in Jackson and no testimony that claimant had ever felt it necessary to take the money with her before when she left the house.[39]

        Claimant was going to Battle Creek to see a dentist. She apparently did not feel safe keeping the money with her during her dentist appointment, nor did she feel safe placing it in her bank when she stopped to make a withdrawal. The bank was virtually next door to the dentist's office. Instead, she says she went to her son's house to hide it in his bedroom. While she thought

---

[39] Trial Trans. at 42.

that her son's bedroom was the safer course of conduct, she did not feel it appropriate to tell her son about the money while it remained behind his refrigerator for a week. While I do not find claimant's story impossible, I do find it highly improbable and too convenient. Undoubtedly, claimant visited Battle Creek to see her dentist approximately a week before the authorities found the drugs and money in her son's apartment. However, claimant's inconsistency in telling her story of how and why she secreted this money in her son's bedroom impeaches her testimony.

The inconsistencies in claimant's testimony fall into several categories. The very fact that there are various categories of inconsistencies is, itself, telling.

### *Amount of Money*

Claimant was unable to accurately identify the amount of currency hidden behind the refrigerator. She stated in her verified claim that she placed $44,000.00 at the house.

Claimant states that the money in issue belongs to both her and her second son, David Gibson, who is incarcerated. Claimant testified that before David was sent to federal prison, he gave her $25,000.00 which represented a combination of two payments received by him from an inheritance. One payment was for $16,666.00 and the other was for $8,335.00 (see exhibit 1). He wanted her to hide this money for him.[40] The total of these two amounts is $25,001.00. Claimant has never suggested in any of her testimony that she has ever removed any part of this $25,001.00.

Claimant testified that the rest of the money at issue belonged to her. Four times she specifically stated that her share exceeded $20,000.00[41] When asked if there was any chance her

---

[40] Trial Trans. at 52-54.

[41] Trial Trans. at 57, 72, 74.

9

share was less than $20,000.00, she said no.[42] If claimant was holding $25,001,00 for David Gibson, then the most money that could belong to her was $19,000.00. This amount is substantially less than the $20,000.00-plus claimed by Ms. Gibson.[43]

On the other hand, adding together what claimant says was hers (over $20,000.00) and what she said she was holding for David ($25,001.00), the total is more than $45,000.00. This exceeds the amount of money seized from behind the refrigerator, which was only $44,000.00. When this discrepancy was pointed out to claimant during examination, and she was asked if she really knew how much money was behind the refrigerator, she adamantly answered that she knew exactly how much money was behind the refrigerator.[44] Claimant's testimony regarding the amount of money involved was inconsistent with the actual amount recovered, and the ambiguities in the course of her testimony belie her claims of certainty.

### *Stacey Gibson's Statements*

Claimant testified that she hid the $44,000.00 behind the refrigerator in her son Stacey Gibson's bedroom on January 26, 2004. She further testified she could not get back into the house on that date to retrieve it. She did not return to the house until February 3rd, shortly after the money had already been seized by law enforcement authorities. Claimant testified she did not tell anyone she had hidden the money behind the refrigerator, either when she did it, nor during the following week. This would include her son, Stacey.

---

[42] Trial Trans. at 72.

[43] Furthermore, claimant's testimony is inconsistent with documents filed in David Gibson's federal criminal matter. David Gibson was furnished appointed counsel in his criminal prosecution and was represented by an attorney at public expense. David Gibson did not disclose his interest in the Helen Latham Trust in his financial affidavit nor did he advise the court of any disbursements from the trust before his sentencing on June 27, 2003. *See United States v. David Gibson*, 1:02-cr-286.

[44] Trial Trans. at 75.

10

Yet when questioned by the police on February 3rd prior to the search, Stacey Gibson knew about the money. He was able to tell authorities exactly where it was hidden. This fact contradicts claimant's assertion she told no one.

Further, unlike claimant's implausible story about hiding the money, Stacey's hiding of this money behind the refrigerator in his own bedroom was perfectly consistent with the fact that he hid other drug money and drugs in the same room.

Interestingly, when Stacey tried to protect the money by telling authorities it came from a legitimate source, he did not say this money belonged to his mother and brother, but rather told authorities that the money belonged to his girlfriend and came from the sale of her house. If this had been his mother's money and had nothing to do with drugs, one presumes Stacey would have simply said so. Obviously, he knew it was drug money and tried to make up his own story on the spot to protect it (the girlfriend subsequently disavowed any knowledge of the money). Stacey's behavior amply indicates that he knew about the money (contrary to claimant's subsequent testimony at the hearing and contrary to the claim by claimant) and knew it was illicit.

### *Claimant's itinerary*

Claimant's testimony regarding her activity on January 26, 2004 is inconsistent and irreconcilable. She gave various testimony regarding the time of her dental appointment: that it was in the late afternoon, that it was not in the morning, that it was early in the day, that it was before she went to the bank at 12:06 p.m., or that she could not remember the time of the appointment.

Claimant initially testified that when she drove from Jackson to Battle Creek on January 26, 2004, the first place she stopped was her son's home on Morgan Road to hide the

11

money, and she then went to the dentist.[45] She said her dental appointment was "late, late afternoon"[46] and that she first went to the house between 1 and 2 p.m., a little before her dental appointment.[47]

Claimant's testimony changed several times on cross examination. A withdrawal slip was produced during claimant's testimony showing that she had withdrawn $50 from her bank at 12:06 p.m. on January 26, 2004.[48] After the introduction of this withdrawal slip, claimant could never satisfactorily explain why she had to stop by her bank to withdraw $50. She had initially maintained that the reason she got the money from the bank was because she was going to go shopping after visiting the dentist and she "didn't have any money."[49] However, this did not make sense when she had $44,000.00 in hundred dollar bills sitting in a bag next to her. She then testified that she must have gone to the bank after going to her son's house and to the dentist, and before she went shopping.[50] But since the withdrawal was made at noon, and she did not go to the dentist until late in the afternoon, this did not make sense either. Claimant then decided she must have gone to the dentist early in the day, rather than late in the afternoon.[51] This line of testimony, however, ran afoul of claimant's earlier testimony that she did not go to her son's home to hide the money until 1 or 2 p.m, prior to going to the dentist. Claimant presented no witness, affidavit or document from

---

[45] Trial Trans. at 58-59, 66, 93

[46] Trial Trans. at 65, 98.

[47] *Id.*

[48] Trial Trans. at 66-68.

[49] Trial Trans. at 68-69, 107.

[50] Trial Trans. at 107, 109.

[51] Trial Trans. at 109.

the dentist's office establishing the time of her appointment. The sole evidence on this issue is a statement from L.C.Chilimigras, D.D.S., dated March 30, 2004, which states services on January 26, 2004 to "seat crown" for Peggy Kay Gibson at a charge of "0.00."[52] Of course, if claimant did not hide the money until 1 or 2 p.m., she had no need to go to the bank at noon because of a lack of money. In short, regardless of which portions of claimant's testimony one credits, her story simply does not hold together.

Claimant also testified that she might have gotten the date of her trip mixed up with February 3rd when she also went to Battle Creek.[53] But this did not happen either. The documentary evidence shows that she both went to the dentist and made her withdrawal from the bank on January 26th. There was no mistake about these dates. Moreover, if she had hidden the money in the house, she would have had to have done this during the January 26th visit, because there was no point in doing it on February 3rd. In fact, she never entered the house on February 3rd because when she arrived on that date, the police were already there and had seized the money.

### *Claimant's vacation*

Of lesser importance, but equally contradictory, is the testimony claimant gave about her prospective vacation, because it raises the question, discussed below, about why she made no particular effort to recover the money.

As a basis for stating that she ran some errands on January 26, 2004 (and therefore did not want to be carrying the $44,000.00 in cash around with her), she said it was necessary "to

---

[52] Deft.'s Exh. 4.

[53] Trial Trans. at 109.

pick up a few things, because I was leaving for vacation the next day."[54] This contradicted claimant's earlier testimony that after finding that she was unable to get back into her son's home after hiding the money, she was hoping she "would be able to go back that week, but that was the last week of working for me, so I didn't get a chance to."[55] When claimant was then asked to confirm that she had left on her vacation the next day, she first stated no, the vacation was "the next week" and then said it was probably the 15th, 17th or 18th of February.[56] Claimant's casual adapting of her testimony to meet new questions suggests more improvisation than integrity in her testimony.

### *Claimant's lack of effort to recover money*

Claimant presented no evidence she alerted authorities about the $44,000.00 in cash hidden in the house when she supposedly returned to Stacey's house on February 3rd. Ms. Gibson presented no evidence that she contacted any governmental authority about the money for nearly three months. Her first, and only, documented effort to claim the money was by filing a verification of claim on April 28, 2004. This behavior is inconsistent with that of a true owner of this money under these circumstances.

### *Testimony of claimant's witness*

The only evidence to support Ms. Gibson's claim of ownership is the brief testimony of her sister, Darleen Turner. Ms. Turner testified that she called Ms. Farmer sometime in February 2004 and Farmer was hysterical saying that "[t]hey took Peggy's money."[57] This statement was

---

[54] Trial Trans. at 66.

[55] Trial Trans. at 62.

[56] Trial Trans. at 99.

[57] Trial Trans. at 115-16.

hearsay. The court rejects claimant's invitation to consider this statement as an excited utterance exception to the hearsay rule. There was not adequate testimony as to either the time the purported statement was made or the circumstances under which it was made. Hysteria alone is not enough. *See* FRE 803(2). The court does not find a sufficient basis to admit this testimony.

In addition, Ms. Farmer's alleged statements would actually seem to contradict claimant's testimony that she told no one about the money.

Finally, when interviewed by federal officers, Ms. Farmer denied knowledge of the money.[58] The court notes that claimant chose not to subpoena the declarant, Ms. Farmer, as a witness to testify on this issue.

## CONCLUSIONS OF LAW [59]

### I.     Civil Forfeiture

This court has jurisdiction. The government's suit is brought pursuant to 21 U.S.C. § 881(a)(6), which provides in relevant part as follows:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> > (6) All moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter.

---

[58] Trial Trans. at 26.

[59] The court recognizes that some of its conclusions of law may contain findings of fact. To that extent, this portion of the court's opinion should be deemed to include both findings of fact and conclusions of law.

15

Civil forfeiture suits are subject to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983(c)(1). *United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670.00)*, 403 F.3d 448, 454 (7th Cir. 2005).

### II. The government has proven by a preponderance of the evidence that the seized currency was the proceeds of drug trafficking.

Pursuant to § 983(c)(1), "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture."[60] To prevail in the present case, the government must show by a preponderance of the evidence that the currency at issue was the proceeds of Stacey Gibson's drug trafficking offenses. *See United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 662 (6th Cir. 2003). "The aggregation of facts, each one insufficient standing alone, may suffice to meet the government's burden." *United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 284 (6th Cir. 1992). The possession of a large amount of cash is strong evidence that the money was furnished or intended to be furnished in return for drugs. *United States v. $118,700.00 in U.S. Currency*, 69 Fed. Appx. 714, 717 (6th Cir. 2003). A claimant's record of drug activity is a "highly probative factor in the forfeiture calculus." *$67,220.00 in U.S. Currency*, 957 F.2d at 286. The government is not required to show a substantial connection to a specific drug transaction when it advances a drug proceeds theory. *See $118,700.00 in U.S. Currency*, 69 Fed. Appx. at 717 n. 1; *United States v. U.S. Currency, in the Amount of $150,660.00*, 980 F.32d 1200, 1205 (8th Cir. 1992). *See also United States v. Four Thousand Seven Hundred Ninety Dollars and 00/100 Dollars ($4,790.00)*, No. 04-3254, 2006 WL 359955 at *5 (C.D. Ill. Feb.

---

[60] Prior to the effective date of CAFRA, the government had the lesser burden of establishing probable cause to believe that a substantial connection exists between the property to be forfeited and the illegal exchange of a controlled substance. See *United States v. Thirty Nine Thousand Dollars ($39,000.00) in United States Currency*, No. 04-2902 ML/AN, 2005 WL 2600217 at *3 n. 3 (W.D. Tenn. Oct. 11, 2005).

16

15, 2006) (noting that while CAFRA changed the burden of proof in forfeiture cases, "the statute still doe not require the Government to trace the proceeds to a particular drug transaction"). It is sufficient if the circumstances establish by a preponderance of the evidence that the money came from drug trafficking generally. *See, eg., United States v. $21,000 in United States Postal Money Orders,* 298 F.Supp. 599, 601 (E.D. Mich. 2003).

  Stacey Gibson participated in two controlled buys of cocaine, had a history of involvement in large drug transactions and forfeited $90,000.00 related to illegal drug activity. Cocaine, marijuana, packaging materials and a scale were seized at the two houses affiliated with him, at 29 Franklin Street and 5201 Morgan Road. At his plea entered in the underlying criminal case, Stacey Gibson admitted that he supplied crack cocaine and powder cocaine to between twelve and twenty <u>dealers</u> in the Battle Creek area. He told federal agents about the $44,000.00 he had hidden behind his refrigerator in his bedroom even before they found it. There were also several thousand more dollars and other drugs in the same room at the same time. His criminal history, admissions, plea and the results of the search warrants are sufficient to establish by a preponderance of the evidence that the $44,000.00 hidden in a bag behind a refrigerator in his bedroom was subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and § 983(c)(1) as proceeds of Stacey Gibson's drug trafficking offenses, and I so find.

  Claimant has testified that the $44,000.00 at issue belonged to her and another son, David Gibson, and that she temporarily left the money at the 5201 Morgan Road residence while she visited the dentist. For the reasons previously discussed, the court does not find claimant's testimony regarding her claim of ownership of the money to be credible, and therefore it is not legally sufficient, when considered together with the other evidence in this matter, to undermine the

preponderance of the evidence finding above that the money constituted proceeds of Stacey Gibson's drug trafficking.

### III.     Ms. Gibson is not an innocent owner of the seized currency.

The "innocent owner" defense is set forth at 18 U.S.C. § 983(d), which provides in pertinent part as follows:

> (1) An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence.
>
> (2)(A) With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term "innocent owner" means an owner who--
>
> > (i) did not know of the conduct giving rise to forfeiture; or
> >
> > (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.
>
> * * *
>
> (6)  In this subsection, the term "owner" --
>
> > (A)   means a person with an ownership interest in the specific property sought to be forfeited.

18 U.S.C. § 983(d)(1), (2) and (6).

Claimant has not raised a true "innocent owner" defense.  Claimant has presented no evidence that she was an innocent owner of money pursuant to § 983(d)(2)(A)(i) or (ii).  Rather, she asserts that the government failed to show a substantial connection between the money and Stacey Gibson's criminal conduct, because the $44,000.00 belonged to her and was not connected to drug offenses.  The "innocent owner" defense is inapplicable where a claimant asserts that the defendant property is unconnected to any illegal transactions.  *See United States v. Thirty Nine Thousand Dollars ($39,000.00) in United States Currency*, No. 04-2902 ML/AN, 2005 WL 2600217

at *3 n. 4 (W.D. Tenn. Oct. 11, 2005); *United States v. Twenty One Thousand Dollars ($21,000.00)in United States Postal Money Orders and Seven Hundred Eighty-Five Dollars ($785.00) in United States Currency*, 298 F. Supp. 597, 602 (E.D. Mich. 2003).

The court has also rejected Ms. Gibson's claims that she is the owner or bailee of the $44,000.00. Accordingly, she cannot qualify as an "innocent owner" pursuant to § 983(d)(6).

## CONCLUSION

Judgment will be entered in favor of the United States of America, and the defendant Forty-Four Thousand Dollars ($44,000.00) will be forfeited to the United States for disposition according to law. A judgment consistent with these findings of fact and conclusions of law shall be issued forthwith.


Dated:  March 30, 2007               /s/ Hugh W. Brenneman, Jr.
                                     Hugh W. Brenneman, Jr.
                                     United States Magistrate Judge